UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                   |
GERARD O'NEILL                     |
                                   |
            Plaintiff,             |
                                   |        08 Civ. 1689(KMW)(RLE)
      -against-                    |
                                   |        OPINION AND ORDER
TINO HERNANDEZ, RICARDO MORALES,   |
NEW YORK CITY HOUSING AUTHORITY, et|
al.,                               |
                                   |
            Defendants.            |
                                   |
-----------------------------------X

KIMBA M. WOOD, U.S.D.J.:

Plaintiff Gerard O'Neill ("Plaintiff") brings this pro se
action against New York City Housing Authority ("NYCHA"); Tino
Hernandez ("Hernandez"), NYCHA's Chairman; Ricardo Morales
("Morales"), NYCHA's General Counsel; and several other NYCHA
employees, some of whom are named in Plaintiff's Complaint and
some of whom are unnamed (collectively, "NYCHA Defendants").
Plaintiff also brings this action against the New York City Legal
Department ("NYCLD"); Richard Carazo, lead attorney for NYCLD;
unnamed employees in New York State housing court; unnamed clerk
employed at 9 Centre Street in New York; Thomas Bia, sheriff in
the New York Sheriff's Office; Natalie Sobchak, supervising
attorney in the Southern District of New York's Pro Se Office;
and three additional staff attorneys in the Pro Se Office
(collectively, in conjunction with NYCHA Defendants,
"Defendants").

1

## I. Introduction

Plaintiff resides in an apartment in a building owned and managed by NYCHA.  (Compl. ¶ 1.)  Plaintiff alleges that Defendants committed a host of statutory and constitutional violations, acted fraudulently, and engaged in tortious conduct, all largely in connection with State court non-payment proceedings brought by NYCHA against Plaintiff in 2005 and 2006 (see Compl. ¶¶ 24, 26).

Defendants seek to dismiss these claims.  Defendants' motion to dismiss is GRANTED in part and DENIED in part and Plaintiff is GRANTED leave to amend his Complaint for the reasons set forth in Part II.

In this order, the Court also DENIES two of Plaintiff's pending motions: (1) Plaintiff's motion for reconsideration of the Court's previous decision to deny Plaintiff leave to file a motion for the undersigned to recuse herself, or in the alternative for the Court to certify to the Second Circuit Court of Appeals the question of whether the undersigned should recuse herself from this case; and (2) Plaintiff's motion to proceed anonymously.

## II. Motion to Dismiss

### A. Procedural History

On or about January 28, 2008, Plaintiff commenced this action in New York State Supreme Court, New York County.  On

February 20, 2008, Defendants removed this action to federal court.  The Court accepted the removed case as related to an earlier action before the Court.[1]

On May 15, 2008, Defendants moved to dismiss Plaintiff's original complaint.  In response, Plaintiff moved to amend the complaint to add new Defendants and to allege new violations by Defendants of federal and state law.  On June 24, 2008, the Court granted Plaintiff's motion to amend the complaint and deemed Defendants' motion to dismiss withdrawn.

On July 7, 2008, Plaintiff filed his First Amended Complaint, the operative complaint ("Complaint").  On July 21, 2008, Defendants moved, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), to dismiss Plaintiff's Complaint on the grounds that it fails to state a claim upon which relief can be granted and that it fails to plead the fraud claims with particularity.[2]

---

[1] On December 13, 2006, Plaintiff filed a complaint in a related action, O'Neill v. New York City Housing Authority, et al., No. 06 Civ. 14377 (hereinafter "related action").  On April 26, 2007, Plaintiff filed an amended complaint in the related action.  On August 20, 2007, the Court dismissed the related action for (1) lack of subject matter jurisdiction, and (2) failure to state a claim upon which relief could be granted.

[2] In conjunction with the motion to dismiss, Defendants filed a declaration by Defendants' counsel, Jeffrey Neiderhoffer, with accompanying exhibits.  Defendants have requested that the Court convert their motion to dismiss into a motion for summary judgment and consider the declarations and materials provided.  Fed. R. Civ. P. 12(c).  Defendants made this request and its implications explicit when it sent to Plaintiff a Notice to Pro

The Court has granted Plaintiff three extensions of time to
file an opposition to Defendants' motion to dismiss.  In the
first order granting an extension of time, the Court stated that
the opposition to the motion to dismiss was due no later than

---

Se Litigant who Opposes a Rule 12 Motion Supported by Matters
Outside the Pleading, as required by the Local Rules for the
Southern District of New York.

The Court declines to convert Defendants' motion to dismiss
into a motion for summary judgment, and, therefore, does not
consider the declaration and exhibits provided by Defendants.

Under the circumstances, the Court finds that <u>pro se</u>
Plaintiff could not have reasonably recognized the possibility
that Defendants' motion to dismiss might be converted into one
for summary judgment.  <u>Krijn v. Pogue Simone Real Estate Co.</u>, 896
F.2d 687, 689 (2d Cir. 1990)(The Court decides whether to convert
a motion to dismiss into a motion for summary judgment by
considering "whether the non-movant should reasonably have
recognized the possibility that the motion might be converted
into one for summary judgment or was taken by surprise and
deprived of a reasonable opportunity to meet facts outside the
pleadings").

Defendants' motion was titled "Motion to Dismiss," and the
briefing included no explicit references to summary judgment.
<u>Id.</u>, at 690 (citing the caption title "motion to dismiss" as one
factor in its decision to reverse the district court's decision
to convert the motion to dismiss into a motion for summary
judgment).  Most notably, the briefing only sets forth the motion
to dismiss standard and makes no mention of the summary judgment
standard.  <u>Fischer v. Talco Trucking, Inc.</u>, 2008 U.S. Dist. LEXIS
73294, at *7-8 (E.D.N.Y. 2008) (The Court declines to convert a
motion to dismiss into a motion for summary judgment, in part,
because the defendants refer to 'dismissal' and the standard on a
motion to dismiss throughout their papers, and rarely refer to
the standard on a motion for summary judgment.") Moreover, in
Defendants' letters sent to the Court, which were copied to
Plaintiff, Defendants state that Plaintiff has not filed an
opposition to Defendants' motion to dismiss.  In those letters,
Defendants make no mention of the request for the pending motion
to be treated as a motion for summary judgment

Accordingly, the Court treats Defendants' motion as a motion
to dismiss despite their request to treat it as a motion for
summary judgment.

September 19, 2008.  In the second order granting an extension of time, the Court stated that Plaintiff's opposition to the motion to dismiss was due no later than November 12, 2008.  In the third order granting an extension of time, the Court stated that Plaintiff's opposition to the motion to dismiss was due no later than March 6, 2009.  In the third order, the Court also explained that if Plaintiff filed an opposition to the motion to dismiss after March 6, 2009, the filing would be deemed untimely and would not be considered by the Court.

The Court has not received an opposition memorandum from Plaintiff.[3]  The Court therefore decides the motion without the benefit of briefing from Plaintiff.

**B. Standard for Motion to Dismiss**

In order to survive a motion to dismiss, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (finding Twombly's motion to dismiss standard generally applicable).  In assessing

---

[3] On March 17, 2009, Plaintiff submitted a letter to the Court asserting that he has responded to Defendants' motion to dismiss.  However, Plaintiff has not received this briefing.

Even if the Court had received an untimely response to the motion to dismiss, the Court would not consider it. Plaintiff has had ample opportunity to respond to the motion to dismiss. Therefore, his delay would not be reasonable under the circumstances.

whether a plaintiff has met this standard, the Court must "constru[e] the complaint liberally, accepting all factual allegations . . . as true, and drawing all reasonable inferences in the plaintiff's favor."[4]  Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008).

"On a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  More than "labels and conclusions" are required, and "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S.Ct. at 1965.  Accordingly, "bald assertions and conclusions of law will not suffice" to survive a motion to dismiss.  Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 132 (2d Cir. 2007).

**C.  Statutory Claims**

Plaintiff alleges that NYCHA Defendants violated his rights under the Brooke Amendment to the United States Housing Act. Plaintiff also alleges that NYCHA Defendants discriminated against him based on his disability in violation of (1) the

---

[4] The Court notes its obligation to construe a pro se Plaintiff's submissions to "raise the strongest arguments that they suggest."  Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted); Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (explaining that a document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyer").

Americans with Disabilities Act, Title II ("Title II of the
ADA"); (2) the Rehabilitation Act of 1973, Section 504 ("Section
504 of the Rehabilitation Act"); and (3) the Fair Housing Act
("FHA").

Plaintiff's primary contention is that Defendants improperly
calculated his rent. He alleges that Defendants "recast" non-
rent housing charges as rent. (Compl. ¶ 31.) Consequently,
according to Plaintiff, he was charged rent in excess of the
Brooke Amendment's prescribed rent ceiling for low-income persons
living in public housing projects. (Compl. ¶¶ 31-32.)

Plaintiff further asserts that his concerns about the rent
calculations were not adequately addressed because he is
disabled; he asserts that rather than substantively addressing
his concerns about rent calculations, NYCHA Defendants arranged
for social workers to harass and coerce Plaintiff into paying
illegal charges. Plaintiff contends that the social workers
would not have tried to coerce him into paying his rent had he
not been disabled, and instead they would have addressed his
complaint on the merits.

1. <u>Housing Act Violation</u>

Plaintiff alleges that NYCHA Defendants failed to comply
with the Brooke Amendment because they "recast" non-rent charges
as rent. The Court finds that Plaintiff has adequately pled this
claim, and therefore DENIES Defendants' motion to dismiss this

claim.

a. Legal Standard

The Brooke Amendment, an amendment to the United States
Housing Act of 1937, provides a ceiling on the rent that can be
charged to residents living in certain public housing projects.
42 U.S.C. § 1437(a).  Under this Amendment, rent in the public
housing projects is limited to the higher of (1) 30% of the
family's monthly adjusted income <u>or</u> (2) 10% of the family's
monthly income.[5]

In addition to rent, a municipality may be allowed "to add
certain fees to cover excess utility use, late payments and
maintenance charges." <u>Binghamton Hous. Auth. v. Douglas</u>, 217
A.D.2d 897, 898 (N.Y. App. Div. 1995); <u>see also</u> <u>Beckham v. N.Y.
city Hous. Auth.</u>, 755 F.2d 1074, 1078 n.2, 1080 (2d. Cir. 1985);
<u>Watertown Hous. Auth. v. Kirkland</u>, 2 Misc. 3d 280, 281 (N.Y. City
Ct. 2003).  These fees are not rent within the meaning of the
Brooke Amendment.  24 C.F.R. 966.4.  To collect these fees, the
municipality must institute proceedings that are separate and
distinct from proceedings in which it seeks unpaid rent.
<u>Binghamton Hous. Auth.</u>, 217 A.D.2d at 898-99.

The Court has jurisdiction, pursuant to 42 U.S.C. § 1983
("Section 1983"), to hear Plaintiff's claim that NYCHA Defendants

_____

[5] The Brooke Amendment also sets out a third method for
calculating the ceiling on rent, which is inapplicable here.

8

calculated his rent in a manner that was in violation of the Brooke Amendment. <u>Wright v. Roanoke Redevelopment & Housing Authority</u>, 479 U.S. 418 (1987)(expressly finding Brooke Amendment violations actionable under Section 1983). As with any other Section 1983 claim, a party seeking to establish a violation of the Brooke Amendment must show (1) defendants acted under color of state law, and (2) defendants' actions deprived plaintiff of her constitutional rights or privileges. <u>Williams v. New York City Hous. Auth. & Local 237, I.B.T.</u>, 2007 U.S. Dist. LEXIS 91134, at *13 (S.D.N.Y. 2007).

Municipalities are liable under Section 1983 "when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 190 (2d Cir. 2007). A municipality's alleged failure to train or supervise municipal employees can violate Section 1983 when the failure is a result of deliberate indifference to resident rights. <u>City of Canton v. Harris</u>, 489 U.S. 378, 392 (1989). Because "[a]n official capacity suit against a public servant is treated as one against the governmental entity itself[,] . . . a state official may be sued in his or her official capacity for injunctive or other prospective relief [] when the state itself is the moving force behind the deprivation." <u>Id.</u> at 191.

9

b. Analysis

Plaintiff alleges that Ricardo Morales and Richard Carazo, in their official capacities as NYCHA's General Counsel and NYCLD's lead counsel, respectively, are liable under Section 1983 for their failure to train and supervise NYCHA employees to recognize and prevent violations of the Brooke Amendment. (Compl. ¶ 51.)  Plaintiff also alleges that NYCHA Defendants violated the Brooke Amendment when they "recast" non-rent charges as rent and therefore, charged him in excess of 30% of his adjusted income.[6] (Compl. ¶ 32.)

Defendants move, pursuant to Federal Rule 12(b)(6), to dismiss Plaintiff's Section 1983 claim.  Defendants do not contest that Morales and Carazo were acting under color of state law.  Defendants' only basis for arguing the claim should be dismissed is that it is "devoid of any allegation that he is being charged rent in excess of the amount permitted by [the Brooke Amendment]."

The Court, construing Plaintiff's claims liberally, finds that Plaintiff <u>does</u> allege that he was charged rent in excess of what is permitted under the Brooke Amendment.  Specifically, Plaintiff states that NYCHA Defendants' deemed Plaintiff's rent payments to be insufficient to cover Plaintiff's rent because

---

[6] Parties do not dispute that for Plaintiff, 30% of his adjusted income was higher than 10% of his total income, and therefore the former was the proper rent ceiling.

10

NYCHA Defendants deducted non-rent charges from the rent payment.[7]  As a result, Plaintiff claims he was effectively required to pay more than 30% of his income if he wanted to avoid the threat of eviction proceedings.  Plaintiff argues that this threat of eviction for failure to pay this additional rent, constituted a deprivation of rights, privileges, and immunities secured by the Constitution and thus is actionable under Section 1983.  (Compl. ¶¶ 31 -33.)

Plaintiff has also pled that the municipality's failure to train and supervise its employees to adequately address Brooke Amendment violations constitutes a deprivation of his rights that is actionable under Section 1983.  He alleges that because of this improper training or supervision, NYCHA did not respond to his requests for audits.  Therefore, his attempts to correct NYCHA Defendants' mistaken charges were unsuccessful. (Compl. ¶ 39.)  Moreover, according to Plaintiff, the NYCHA had no fraud protection safeguards of its own.  (Compl. ¶ 40.)

For the reasons set forth above, the Court concludes that Plaintiff adequately plead a violation of the Brooke Amendment, which is actionable under Section 1983.  Accordingly, Defendants' motion to dismiss the Brooke Amendment claim is DENIED.

---

[7] Plaintiff states that NYCHA would have had no reason to evict him had they not miscalculated his rent: "the only issue at bar, was money derived from illegal charges 'recast' as rent." (Compl. ¶ 44.)

11

_____    2. Title II of the ADA and Section 504 of the
Rehabilitation Act

_____a. Legal Standard

Under the ADA, a disability is defined as either: (1) a
physical or mental impairment that substantially limits one or
more of the major life activities of [an] individual; (2) a
record of such an impairment;[8] or (3) being regarded as having
such an impairment.  Colwell v. Suffolk County Police Dep't, 158
F.3d 635, 641 (2d Cir. 1998).

To state a claim under Title II of the ADA, a plaintiff must
allege that: (1) he is a "qualified individual" with a
disability;[9] (2) the defendants are subject to the ADA; and (3)
the plaintiff was denied the opportunity to participate in or
benefit from defendants' services, programs, or activities, or
were otherwise discriminated against by defendants, by reason of
plaintiff's disability.  Henrietta D. v. Bloomberg, 331 F.3d 261,

---

[8] This provision ensures that people who are discriminated
against because of a history of disability can obtain recourse
under the ADA.  See 29 C.F.R. pt. 1630 App., § 1630.2(k); Colwell
v. Suffolk County Police Dep't, 158 F.3d 635, 645 (2d Cir. 1998).
Plaintiff does not allege that he has a record of impairment.

[9] "Under the ADA, Congress has defined 'qualified individual
with a disability' as an individual with a disability 'who, with
or without reasonable modifications to rules, policies, or
practices . . . meets the essential eligibility requirements for
the receipt of services or the participation in programs or
activities provided by a public entity.'"  Doe v. Pfrommer, 148
F.3d 73, 82 (2d Cir. 1998) (quoting 42 U.S.C. § 12131(2) and 28
C.F.R. § 35.104).

12

272 (2d Cir. 2003).  The same elements must be alleged to
establish a violation under Section 504 of the Rehabilitation
Act, and, in addition, the plaintiff must allege that the
defendants receive federal funding.  Id.

        A plaintiff has to adequately allege all the elements of
these claims in order to survive a motion to dismiss; a finding
that a plaintiff has failed to plead with sufficient specificity
any one of the elements is enough to support a dismissal of the
claim.

                    b. Analysis

        Defendants argue that Plaintiff fails to plead the first and
third elements of his ADA and Rehabilitation Act claims.  The
Court addresses the first element of the ADA and Rehabilitation
claims — whether Plaintiff has alleged a disability.

        Plaintiff states in his complaint:

        Plaintiff is an individual considered disabled with
        physical or mental impairment that substantially limits
        one or more major life activities; and his disability is
        known to others as required by the Americans with
        Disability Act (ADA) 42 U.S.C. § 12101.

(Compl. ¶ 28.)  Plaintiff provides no other factual allegations
in support of his claim that he is disabled within the meaning of
the ADA and Rehabilitation Act.

        Because Plaintiff states no facts in support of his claim

that he is "considered disabled,"[10] the Court GRANTS Defendants'
motion to dismiss Plaintiff's ADA and Rehabilitation Act
claims.[11] <u>Reddington</u>, 511 F.3d at 132.

### 3. The Fair Housing Act

a. Legal Standard

Under the Fair Housing Act ("FHA"), it is unlawful to
discriminate against a person in the rental of a dwelling on the
basis of his handicap.  42 U.S.C. § 3604(f).  A handicap is

---

[10] Plaintiff also alleges that NYCHA Defendants treated him
as if he were disabled.  He provides many factual allegations in
support of this claim. (<u>See</u> Compl. ¶¶ 47, 49, and 59.)  However,
these allegations are insufficient to show that he was disabled
within the meaning of the ADA or the Rehabilitation Act.
     Construing Plaintiff's allegations that he was treated as if
he were disabled, as a claim that he was "regarded as disabled,"
Plaintiff's claim must still be dismissed.  Under the ADA and
Rehabilitation Act, Plaintiff has to allege that he is <u>not</u>
disabled to plead that he was discriminated against on account of
being regarded as disabled.  <u>See</u> 29 C.F.R. 1630.2 ("Is regarded
as having such an impairment means: (1) Has a physical or mental
impairment that does not substantially limit major life
activities but is treated by a covered entity as constituting
such limitation; (2) Has a physical or mental impairment that
substantially limits major life activities only as a result of
the attitudes of others toward such impairment; or (3) Has none
of the impairments defined [infra] but is treated by a covered
entity as having a substantially limiting impairment); <u>See also</u>
<u>Gentile v. Potter</u>, 509 F. Supp. 2d 221, 237 (E.D.N.Y. 2007)
(explaining that under the Rehabilitation Act, one has to
establish that one is <u>not</u> disabled to prevail on a claim of
discrimination for being regarded as having a disability).  29
CFR 1630.2.

[11] If Plaintiff chooses to amend his complaint, he should be
aware that he must provide sufficient factual allegations in
support of all elements of this claim.  The Court has <u>not</u> reached
the question of whether the facts alleged support the remaining
elements necessary to state a claim under the ADA or the
Rehabilitation Act.

defined as: (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 3602(h); see also Elmowitz v. Executive Towers at Lido, LLC, 2008 U.S. Dist. LEXIS 88967, at * 8 (E.D.N.Y. 2008).

b. Analysis

Plaintiff does not allege that he is handicapped within the meaning of the FHA. However, as noted above, Plaintiff alleges that he is disabled. (Compl. ¶ 28.) The Court recognizes that the legal test for "disabled" and "handicapped" are similar. Resnick v. 392 Cent. Park W. Condo., 2007 U.S. Dist. LEXIS 60232, at *8 n. 1(S.D.N.Y. 2007) (explaining that the language and requirements under the ADA and Rehabilitation Act are "in all material respects, identical to the language in the Fair Housing Act."); Elmowitz, at *8 n. 5 (same). In light of this similarity between the terms "handicapped" and "disabled," as well as the Court's obligation to construe a pro se party's pleadings liberally, the Court reads Plaintiff's allegation that he is disabled as an allegation that he is handicapped.

Plaintiff fails to provide adequate factual allegations in support of his claim that he is handicapped within the meaning of the FHA. He does not allege that he (1) has a physical or mental impairment which substantially limits one or more of such

15

person's major life activities, (2) has a record of having such an impairment, or (3) is regarded as having such an impairment. Accordingly, the Court GRANTS Defendants' motion to dismiss the FHA claim.

### D.  Constitutional Claims

Plaintiff states in his complaint that Defendants violated his Fourth Amendment right (Compl. ¶ 68), Fifth Amendment right (Compl. ¶ 69), Eighth Amendment right (Compl. ¶ 70.), Fourteenth Amendment right to due process (Compl. ¶ 71-72), and Fourteenth Amendment right to equal protection (Compl. ¶ 73).  Defendants move to dismiss all of these claims.  The Court DENIES Defendants' motion to dismiss Plaintiff's Fourteenth Amendment equal protection claim.  The Court GRANTS Defendants' motion to dismiss the remainder of Plaintiff's constitutional claims.

### 1. Fourth, Fifth, and Eighth Amendment Claims

Plaintiff provides only bald assertions and conclusions of law in support of his Fourth Amendment, Fifth Amendment, and Eighth Amendment claims.  Because such bald assertions and conclusions of law are insufficient to defeat a motion to dismiss, Reddington, 511 F.3d at 131, the Court GRANTS Defendants' motion to dismiss Plaintiff's Fourth Amendment, Fifth Amendment, and Eighth Amendment claims.

### 2. Fourteenth Amendment Due Process Claim

The Court construes Plaintiff as alleging a Fourteenth

Amendment procedural due process claim, on the ground that
Plaintiff was deprived a property right without due process of
law.  The alleged property interest is Plaintiff's interest in
having his rent calculated consistent with the Brooke Amendment.
Plaintiff alleges that Defendants miscalculated his rent and that
he was threatened with eviction on account of this
miscalculation.  Plaintiff claims that the miscalculation
constituted a deprivation of a property interest, and this
deprivation was not accompanied by a post-deprivation hearing.

   a. Legal Standard

  Under the Due Process Clause of the Fourteenth Amendment,
"generally, a person must be afforded the opportunity for a
hearing prior to being deprived of a constitutionally protected
liberty or property interest."  Patterson v. City of Utica, 370
F.3d 322, 329 (2d Cir. N.Y. 2004).  Under certain circumstances,
a post-deprivation hearing in lieu of a pre-deprivation hearing
may be constitutional.  See Mathews v. Eldridge, 424 U.S. 319
(1976) (establishing a three-prong test for analyzing whether a
post-deprivation hearing instead of a pre-deprivation hearing
denies a person his procedural due process rights).

  Procedural due process does not require both a pre-
deprivation and post-deprivation hearing.  See Giglio v. Dunn,
732 F.2d 1133, 1135 (2d Cir. 1984).  Typically, when the
defendant has conducted a pre-deprivation hearing, the

plaintiff's procedural due process rights have been met.  See, e.g. Southerland v. Giuliani, 4 Fed. Appx. 33, 36 (2d Cir. 2001). Accordingly, the absence of a post-deprivation hearing does not constitute a due process violation unless there has been no pre-deprivation hearing.

        b. Analysis

    Plaintiff has not alleged that he was denied a pre-deprivation hearing.  In fact, the Complaint mentions non-payment and evictions proceedings, some of which the Complaint describes as hearings, that occurred prior to the Defendants taking any official action to evict Plaintiff.  (See Compl. ¶¶ 26, 31, 67, and 97.)

    If Plaintiff was in fact provided a pre-deprivation hearing, the Defendants' failure to provide a post-deprivation hearing would not constitute a violation of Plaintiff's due process rights.  Therefore, Plaintiff's allegation that he was denied a post-deprivation hearing is insufficient to allege that Defendants' conduct violated his procedural due process rights.

    Moreover, for the reasons discussed in the next section, Plaintiff's allegations that his pre-deprivation proceedings were tainted by fraud (Compl. ¶ 35) and therefore were inadequate, are not properly pled.  Accordingly, the Court finds that Plaintiff has not adequately pled a violation of his Fourteenth Amendment right to procedural due process.

3. Fourteenth Amendment Equal Protection Claim

Plaintiff alleges that NYCHA Defendants treated him differently than they treated non-disabled people on account of his disability, and that this disparate treatment constituted a violation of his Fourteenth Amendment right to equal protection.[12]  Plaintiff cites, as an example of the disparate treatment, NYCHA's decision to involve social workers when a disabled person is being evicted, and not to involve social workers when a non-disabled person is being evicted.  Plaintiff alleges that the social workers were sent to harass and coerce disabled residents.  (Compl. ¶¶ 59-62.)

a. Legal Standard

The Court applies rational-basis review when considering claims of disability discrimination, because disabled persons are not a "suspect" class.  Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001).  "Where disability discrimination is at issue, the Fourteenth Amendment only proscribes government conduct for which there is no rational relationship between the disparity of treatment and some

---

[12] As noted above, the Court finds that Plaintiff has failed to establish that he is disabled under the ADA or Rehabilitation Act, or that he is handicapped within the meaning of the FHA. However, Defendants do not argue that these definitions of disability govern who is disabled for the purpose of analyzing Plaintiff's Equal Protection claim.  Because Plaintiff alleges that NYCHA Defendants treated Plaintiff as if he were disabled, the Court considers Plaintiff disabled for the purposes of the Equal Protection analysis.

19

legitimate governmental purpose." <u>Garcia v. State Univ. of N.Y. Health Scis. Ctr.</u>, 280 F.3d 98, 109 (2d Cir. 2001); <u>Disability Advocates, Inc. v. McMahon</u>, 290 U.S. App. LEXIS 3295, at *5 (2d Cir. 2005).

           b. Analysis

Plaintiff's allegation that the social workers were sent to harass only disabled residents, such as himself, sufficiently pleads that there was no rational relationship between NYCHA's decision to involve social workers when disabled persons were subject to eviction, and any legitimate government purpose. Therefore, Plaintiff has adequately alleged a disability discrimination claim under the equal protection clause of the Fourteenth Amendment.

Accordingly, Defendants' motion to dismiss Plaintiff's equal protection claim is DENIED.

**E. Fraud Claims**

Plaintiff alleges that Defendants committed (1) fraud and (2) malicious prosecution or abuse of process.[13] Defendants

---

[13] In support of these claims, Plaintiff alleges that:
   (1) the NYCHA's rent ledgers were "fraudulently and intentionally miscalculated" (Compl. ¶¶ 26, 35);
   (2) the miscalculated rent ledgers were presented in court proceedings despite NYCHA and NYCLD Defendants' knowledge that the information was fraudulent (Compl. ¶ 35);
   (3) Plaintiff's requests for an audit were unanswered (Compl. ¶ 39);
   (4) NYCHA had no fraud detection safeguards (Compl. ¶ 40);
   (5) NYCHA Defendants threatened to evict Plaintiff, but had no intention of actually evicting him – as evidenced by NYCHA

argue that Plaintiff's allegations are insufficient to meet
Federal Rule of Civil Procedure 9(b) requirement of pleading
fraud claims with particularity.  Thus, Defendants move to
dismiss all of Plaintiff's fraud claims.  The Court agrees with
Defendants, and GRANTS Defendants' motion to dismiss.

    1.  <u>Common Law Fraud</u>

        a. Legal Standard

Under New York State law, to state a claim for common law
fraud, Plaintiff must allege: "(1) a misrepresentation or a
material omission of material fact which was false and known by
defendant to be false, (2) made for the purpose of inducing the

---

Defendants' failure to inform Sheriff Thomas Bia of the pending
eviction (Compl. ¶ 49);

    (6) NYCHA had social workers visit Plaintiff in order to
"harass or coerce" him so that he would pay the illegal charges
(Compl. ¶¶ 58 - 61, 64);

    (7) Plaintiff was forced to attend an administrative
hearing, at which the "fraudulent and materially misleading"
documentation was repeatedly used "without regard to any
protestation over the use of these fraudulent documents (Compl. ¶
67);

    (8) Defendants' abused the judicial process because they
could (Compl. ¶ 74);

    (9) On August 31, 2007, Plaintiff was reading his tenant
file at the NYCHA Records Department when supervisor Genieve
Davis requested his tenant file, removed a pink slip of paper
which stated the reasons why tenant received an eviction notice
on May 2006, and then returned the file to Plaintiff (Compl. ¶
78);

    (10) In 2006, the Sheriff's office told Plaintiff that his
eviction file was only one page long whereas in June 2008 his
file was twenty-pages long (Compl. ¶¶ 83-87);

    (11) NYCLD and the Pro Se Office of the Southern District of
New York sent Plaintiff letters at similar times and with similar
content (Compl. ¶¶ 88-92).

plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance." <u>City of New York v. Smokes-Spirits.com, Inc.</u>, 541 F.3d 425, 454 (2d Cir. 2008).

Plaintiff must plead with particularity the circumstances constituting fraud or mistake.  Fed. R. Civ. P. 9(b).  Pleading with particularity requires the plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2d Cir. N.Y. 2006)(quoting <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Conditions of a person's mind, such as whether a statement was known by a defendant to be false, can be alleged generally. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). However, the complaint must allege enough facts that "give rise to a strong inference of fraudulent intent." <u>McCrae Assocs., LLC v. Universal Capital Mgmt.</u>, 554 F. Supp. 2d 249, 253 (D. Conn. 2008)(quoting <u>Acito v. IMCERA Group, Inc.</u>, 47 F.3d 47, 52 (2d Cir. 1995)).  A strong inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by

alleging facts that constitute strong circumstantial evidence of
conscious misbehavior or recklessness." Id. at 253-54 (quoting
Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.
1994)).

        b.  Analysis

    Plaintiff alleges that the NYCHA and NYCLD attorneys
committed fraud when they submitted documents in state court that
were fraudulent. (Compl. ¶ 35.)  Plaintiff also alleges that
Defendants "intentionally misrepresented material facts,
scienter, and falsity," which are claims that the Court deems to
be subsumed by the common law fraud claim. (Compl. page 8.)  The
Court assumes, without deciding, that Plaintiff has adequately
pled the identity of the allegedly fraudulent actors – "attorneys
working for the NYCHA and NYCLD" - and that these attorneys were
submitting information that misrepresented Plaintiff's rent
obligations.

    To adequately plead fraud, Plaintiff must allege that these
NYCHA and NYCLD attorneys knew that the statements they were
making were false.  The Court finds that Plaintiff has not
adequately alleged this element of fraud.

    Plaintiff's statements that his "requests for audits . . .
went unanswered" and that there were insufficient "fraud
detection safeguards to protect tenants" (Compl. ¶¶ 39-40) do
not, on their own "constitute strong circumstantial evidence of

conscious misbehavior or recklessness." <u>McCrae Assocs.</u>, 554 F. Supp. 2d at 254.  Plaintiff does not allege a motive for why the attorneys would produce fraudulent documentation.  Also, Plaintiff's statement that the documents provided in the court were "riddled with fraudulent accounting practices" and that Defendant attorneys acted "without regard to any protestation over the use of these fraudulent documents" are too conclusory to support a claim of fraudulent intent.  Plaintiff's assertions fail to provide the necessary support for the allegation that the attorneys in question had knowledge of fraud.[14]

### 2. <u>Malicious Prosecution or Abuse of Process</u>

Plaintiff alleges that NYCHA Defendants maliciously prosecuted him and abused the judicial process.  Defendants seek to dismiss these claims on the ground that Plaintiff does not adequately plead these causes of action.  For the following reasons, the Court agrees with Defendants and GRANTS their motion to dismiss the claims of malicious prosecution and abuse of process.

### a. Malicious Prosecution

Plaintiff must prove the following four elements to state a

---

[14] The Court does not address Plaintiff's claim that NYCHA and NYCLD attorneys committed fraud on the court because the alleged fraud on the Court was in the state housing court and not this court.  <u>Wagner Spray Tech Corp. v. Wolf</u>, 113 F.R.D. 50, 52 (S.D.N.Y. 1986)("A claim of fraud against the court must be made in the tribunal allegedly defrauded.").

claim for malicious prosecution under New York State law:

> (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, and (4) actual malice.

Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195 (2000)(internal citations omitted); Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. N.Y. 1999). Plaintiff does not allege that he was subject to criminal proceedings, the first element required to plead a claim of malicious prosecution. Therefore, Plaintiff's malicious prosecution claim is dismissed.

    b. Abuse of Process

To plead an abuse of process claim, Plaintiff must allege: "regularly issued process, civil or criminal, compelling the performance or forbearance of some prescribed act;" (2) "the person activating the process must be moved by a purpose to do [economic or social] harm;" and (3) "defendant[s] must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process." Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n., 38 N.Y.2d 397, 403 (1975); see also Savino v. City of New York, 331 F.3d 63, 70 (2d Cir. N.Y. 2003); Panish v. Steinberg, 819 N.Y.S. 2d 549, 550 (App. Div. 2006).

Plaintiff alleges that Defendants overcharged him rent in violation of the Brooke Amendment and harassed him during

25

eviction proceedings.  However, Plaintiff fails to allege that
Defendants intentionally miscalculated Plaintiff's rent, or
believed that he did not actually owe any rent, and initiated
groundless eviction proceedings for the purpose of removing
Plaintiff from the housing unit.  To the extent that Plaintiff
argues that eviction proceedings were initiated in order to
harass Plaintiff, "malicious motive alone . . . does not give
rise to a cause of action for abuse of process." <u>Curiano v.
Suozzi</u>, 63 N.Y.2d 113, 117 (1984).

Plaintiff's eviction is a legitimate end of the eviction
process if Defendants had ground to believe that Plaintiff owed
rent.  Therefore, the harm that Plaintiff alleges is not a
collateral advantage or detriment outside the eviction process.
Accordingly, Plaintiff's claim of abuse of process is dismissed.

### F. Infliction of Emotional Distress

Plaintiff argues that Defendants engaged in conduct that is
actionable as either intentional infliction of emotional
distress, or negligent infliction of emotional distress.[15]   He
alleges that "[t]he history and pattern of NYCHA's vexatious and
petty housing court proceedings" were conducted with an intent to

---

[15] Plaintiff also alleges that Defendants committed a common
law tort by invading his privacy.  New York State has explicitly
stated that it does not recognize under common law the tort of
invasion of privacy.  <u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115,
123 (1993) ("We have no common law of privacy.").  Plaintiff's
invasion of privacy claim is dismissed.

inflict immediate injury upon him and put him in "immediate apprehension of harm."[16] (Compl. ¶ 96.)

a. Legal Standard

Under New York State Law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must allege:

> (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.

Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001)(internal citations omitted). Likewise, to state a cause of action for negligent infliction of emotional distress, the Plaintiff must allege that the Defendants' conduct was extreme and outrageous. Campoverde v. Sony Pictures Entm't, 2002 U.S. Dist. LEXIS 18347, *40 (S.D.N.Y. 2002)("plaintiffs must allege conduct that 'was so outrageous and extreme as to support a claim for emotional distress,' which is the same standard used in intentional infliction of emotional distress cases")(quoting Acquista v. New York Life Ins. Co., 285 A.D.2d 73, 82 (N.Y. App. Div. 2001)); Dillon v. City of New York, 261 A.D.2d 34, 41 (N.Y. App. Div.

---

[16] The Court notes that public policy bars claims for intentional infliction of emotional distress against government entities. Batista v. City of New York, 2007 U.S. Dist. LEXIS 71905, at *26 (S.D.N.Y. 2007). Therefore, the Court construes this claim as a claim against the individuals who are named Defendants and not the New York City Housing Authority itself. Id.

27

1999) ("We have applied the same standard to both the intentional and negligence theories of emotional distress . . . [which] must be clearly alleged for the pleadings to survive dismissal.").

The standard for alleging "extreme and outrageous conduct" is "rigorous, and difficult to satisfy," because the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (internal citations omitted).

Plaintiff's allegation that NYCHA Defendants engaged in "vexatious and petty housing court proceedings" does not rise to the level of extreme and outrageous conduct actionable as intentional infliction of emotional distress. The descriptive terms used by Plaintiff – "vexatious" and "petty" – themselves reveal that the alleged conduct is best characterized as more of an annoyance and frustration than incidences of extreme and outrageous conduct.[17]

---

[17] The conduct alleged by Plaintiff is a far cry from the conduct found to be outrageous and extreme in Vasarhelyi v. New School for Social Research, 230 A.D.2d 658, 659-60 (N.Y. App. Div. 1996), a case cited by Plaintiff in support of his claim. (Compl. ¶ 98.) In Vasarhelyi, an employee was interrogated for ten hours by criminal attorneys hired by her employer. During that time, the interrogators "were hostile, abusive and threatening." Id. The interrogators "stat[ed] that "'the FBI in Washington was assisting in the investigation[,]. . . humiliated her for her use of English (which is not her native language)[,] probed into her personal relationships with co-workers, trustees and even her husband, [and] impugned both her honesty and her chastity." Id. The plaintiff alleged that she wanted to stop

28

      Moreover, Plaintiff's claim that the housing proceedings were "vexatious and petty" is too vague and conclusory to support a claim for intentional infliction of emotional distress or negligent infliction of emotional distress. <u>M+J Savitt, Inc. v. Savitt</u>, 2009 U.S. Dist. LEXIS 21321, at *42 (S.D.N.Y. 2009). Accordingly, Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim and negligent infliction of emotion distress claim is GRANTED.

**G. Summary of Disposition**

      The Court GRANTS Defendants' motion to dismiss on the following claims:

      Plaintiff's statutory claims under (1) Title II of the ADA, (2) Section 504 of the Rehabilitation Act, and (3) the Fair Housing Act;

      Plaintiff's Constitutional claims under the (1) Fourth Amendment, (2) Fifth Amendment, (3) Eighth Amendment, and (4) Fourteenth Amendment due process clause;

      Plaintiff's fraud claims, including common law fraud, malicious prosecution, and abuse of process; and

      Plaintiff's tort claims, including his intentional infliction of emotional distress and negligent infliction of emotional distress claims.

---

the questioning, but was told that she would have to "face the consequences" if she did not continue the examination. <u>Id.</u>

The Court DENIES the motion to dismiss on the following claims:

Plaintiff's claim that NYCHA Defendants violated the Brooke Amendment; and

Plaintiff's claim that NYCHA Defendants denied him his Fourteenth Amendment right to equal protection.

## H.  Leave to Amend

"[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility," courts should grant leave to amend pursuant to Federal Rule of Civil Procedure 15.  Monahan v. New York Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000).  The Court finds that Plaintiff has not unduly delayed in pursuing his claims, acted in bad faith, or acted with dilatory motives, and Defendants have not argued otherwise.

Given the early procedural posture of the case and the possibility that Plaintiff's claims may be meritorious, the Court finds it would not be unduly prejudicial or futile to grant Plaintiff leave to amend the Complaint.[18]  Accordingly, the Court

[18] The Court limits Plaintiff's leave to amend in one respect.  Plaintiff may not amend his claim that he was maliciously prosecuted.

As noted above, a claim for malicious prosecution requires that the defendant commence or continue a criminal proceeding against the plaintiff.  Here, Defendants do not have the authority to prosecute criminally, therefore, giving Plaintiff leave to amend this claim would be futile. Lucente v. IBM, 310 F.3d 243, 258 (2d Cir. 2002) (explaining that "[a]n amendment to

30

grants Plaintiff leave to amend the Complaint.  Likewise, the
Court grants Plaintiff leave to amend the Caption.[19]  Fed. R.
Civ. P. 15(c)(1)(B),(C).

IF PLAINTIFF CHOOSES TO FILE AN AMENDED COMPLAINT, HE MUST
DO SO BY MAY 15, 2009.

## III.  Plaintiff's Motion for an Interlocutory Appeal

The Court now turns to Plaintiff's request for
reconsideration, or, in the alternative, certification for
interlocutory appeal of this Court's July 31, 2009 decision,
denying Plaintiff leave to file a motion for recusal.[20]

In July 2008, Plaintiff moved for the recusal of the
undersigned pursuant to 28 U.S.C. § 455.  Plaintiff alleged that
the undersigned's impartiality might reasonably be questioned
because Plaintiff names employees of the Pro Se Office of the
Southern District of New York as defendants.  Plaintiff asserted
that the undersigned may know or favor these Defendants because
they work in the same courthouse as the undersigned, and,
accordingly, that the undersigned cannot be impartial in

---

a pleading is futile if the proposed claim could not withstand a
motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)").

[19] On February 13, 2009, Plaintiff submitted a motion for
leave to amend his caption.  Defendants opposed this motion, but
offered no compelling reason why leave should be denied.

[20] The Court will address in a future order, Plaintiff's
motion for certification for interlocutory appeal of the Court's
order denying a stay of state court proceeding.

31

adjudicating claims against them.

Plaintiff also asserted that the undersigned's impartiality may be in question because this Court ruled in favor of Defendants in a separate but similar action. In 2006, Plaintiff filed claims against several of the Defendants that are now party to this case. The Court granted Defendants' motion to dismiss Plaintiff's 2006 action. Plaintiff argued that the undersigned should disqualify herself from the instant case because the dismissal of the 2006 action demonstrates that she has already formed an opinion about the merits of Plaintiff's claims.

In an order dated July 31, 2008, the Court denied Plaintiff's leave to file a motion for recusal. The Court found that the undersigned's impartiality is not impaired by the Court's dismissal of Plaintiff's 2006 action, or by the undersigned's purely professional relationship with the Pro Se Office of the Southern District of New York.

In a motion before this Court dated November 7, 2008, Plaintiff seeks reconsideration or, in the alternative, certification for interlocutory appeal of this Court's order denying leave to file a motion for recusal.

        a. Legal Standard

The Court may grant a motion for reconsideration when there has been an intervening change of controlling law, the availability of new evidence, or the need to correct a clear

error or prevent a manifest injustice.  Official Comm. of the
Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,
LLP, 322 F.3d 147, 167 (2d Cir. 2003).

The Court may certify an immediate appeal of an
interlocutory order if the court finds that the "order involves a
controlling question of law as to which there is substantial
ground for difference of opinion and that an immediate appeal
from the order may materially advance the ultimate termination of
the litigation."  28 U.S.C. § 1292(b).

### b. Analysis

Plaintiff fails to offer any arguments, consistent with the
above standards, for the requested relief.  Accordingly, the
Court DENIES Plaintiff's motion for reconsideration, or
certification for interlocutory appeal, of this Court's denial of
leave to file a motion for recusal.

## VI. **Plaintiff's Motion to Proceed Anonymously**

On March 19, 2009, Plaintiff filed a motion to proceed
anonymously.  Plaintiff seeks to use the pseudonym "John Doe" on
all court documents.  The Court DENIES Plaintiff's motion for the
following reasons.

Courts begin with a presumption against anonymous or
pseudonymous pleading.  Doe v. Del Rio, 241 F.R.D. 154, 156
(S.D.N.Y. 2006).  This presumption stems from Federal Rule of
Civil Procedure 10(b), which "expressly requires civil actions be

brought in the true name of the plaintiffs, providing that every pleading shall carry 'the title of the action,' and that in the complaint such title 'shall include the names of all the parties.'" Id. (quoting Fed. R. Civ. P. 10(b)). This requirement recognizes the "public's common law right of access to judicial proceedings." Id.

This presumption against anonymous pleading can be overcome. The Court must "balance the plaintiff's right to privacy and security against the dual concerns of (1) the public interest in identification of litigants and (2) the harm to the defendant stemming from suppression of plaintiff's name." Id. at 157 (internal quotation and citations omitted). "The weight of the presumption of openness is such, however, that courts have granted requests for pseudonymity in limited matters of a sensitive and highly personal nature." Id.

Plaintiff asserts that proceeding anonymously is necessary because the disclosure of his identity will make him "particularly vulnerable to other harms or retaliation." However, Plaintiff has neither identified any specific real or potential harms that would result from listing his name on the complaint, nor has he established that this is a case of a particularly sensitive nature.

Plaintiff has failed to rebut the strong presumption against proceeding anonymously. Accordingly, the Court DENIES

Plaintiff's motion to proceed under an anonymous name.

## V.  Conclusion

### A. Defendants' Motion to Dismiss

The Court GRANTS Defendants' motion to dismiss Plaintiff's claims under (1) Title II of the ADA, (2) Section 504 of the Rehabilitation Act, (3) the Fair Housing Act, (4) the Fourth Amendment of the Constitution, (5) the Fifth Amendment of the Constitution, (6) the Eighth Amendment of the Constitution, and (7) the Fourteenth Amendment due process clause of the Constitution.  The Court also dismisses Plaintiff's (1) common law fraud claim, (2) malicious prosecution claim, (3) abuse of process claim, (4) intentional infliction of emotional distress claim, and (5) negligent infliction of emotional distress claim.

The Court DENIES Defendants' motion to dismiss Plaintiff's claims that NYCHA Defendants (1) violated the Brooke Amendment, and (2) denied Plaintiff his Fourteenth Amendment right to equal protection.

The Court GRANTS Plaintiff leave to amend.  If Plaintiff chooses to file an amended complaint, he must do so by MAY 15, 2009.

### B. Plaintiff's Motion for Reconsideration or Certification for Interlocutory Appeal

The Court DENIES Plaintiff's motion for reconsideration, or in the alternative, certification for interlocutory appeal of

this Court's July 31, 2008 decision, denying Plaintiff leave to file a motion for recusal.

### C. Plaintiff's Motion to Proceed Anonymously

The Court DENIES Plaintiff's motion to file anonymously.

SO ORDERED.

Dated:    New York, New York
          March  31 , 2009

                              _____
                                    Kimba M. Wood
                              United States District Judge

36