UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             |
GERARD O'NEILL,                                              |
                                                             |
                        Plaintiff,                           |
                                                             |           08 Civ. 1689 (KMW)
                                                             |
                                                             |           OPINION AND ORDER
                                                             |           ON MOTION FOR
TITO HERNANDEZ, RICARDO MORALES,                             |           SUMMARY JUDGMENT
NEW YORK CITY HOUSING                                        |
AUTHORITY, et al.,                                           |
                                                             |
                        Defendants.                          |
                                                             |
-------------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

**I. Introduction**

  Plaintiff brings this action against the New York City Housing Authority (NYCHA),

Tino Hernandez (former Chairman of NYCHA), Ricardo Morales (former NYCHA General

Counsel), and a number of named and unnamed employees of the following agencies: NYCHA,

the New York City Law Department (NYCLD), the New York City Comptroller Office, the New

York City Human Resources Administration, and the pro se office of the United States District

Court for the Southern District of New York.  Plaintiff sets forth a number of allegations related

to (1) several non-payment proceedings that NYCHA initiated against Plaintiff in New York

State court in 2005 and 2006; (2) actions taken by NYCHA social workers; and (3) conduct by

various state actors.

  Plaintiff's Second Amended Complaint seeks damages under the following federal

statutes and Constitutional provisions: (1) the Brooke Amendment of the United States Housing

Act, 42 U.S.C. § 1437(a)(1)(A); (2) Title VI of the Civil Rights Act of 1964; (3) the Americans

with Disabilities Act; (4) Section 504 of the Rehabilitation Act of 1973; (5) the Fair Housing

Act; (6) 42 U.S.C. §§ 1985 and 1986; (7) the Racketeering Influenced and Corrupt Organizations Act (RICO); and (8) Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution;.[1]

Plaintiff also asserts a number of state common law causes of action, including: (1) fraud and misrepresentation; (2) malicious prosecution; (3) abuse of process; (4) intentional and negligent infliction of emotional distress; (5) invasion of privacy; and (6) intentional prima facie tort.

Defendants now move to dismiss Plaintiffs' Second Amended Complaint or, in the alternative, for summary judgment on all claims.  The Court treats Defendants' motion as one for summary judgment.  Plaintiff has cross-moved for summary judgment on his fraud claim.  As set forth below, the Court finds that Plaintiff's claims are without merit.  Accordingly, the Court GRANTS Defendants' motion for summary judgment with respect to all claims.  The Court DENIES Plaintiff's cross-motion for summary judgment.

**II. Procedural History**

On or about January 28, 2008, Plaintiff commenced this action in New York State Supreme Court, New York County.  On February 20, 2008, Defendants removed the action to this Court.  The Court accepted the removed case as related to a previous action before the Court, O'Neill v. New York City Hous. Auth., et al., No. 06 Civ. 14377.  In 2007, the Court dismissed the previous related action (1) for lack of subject matter jurisdiction, and (2) because Plaintiff failed to state a claim upon which relief could be granted.  (Order, Aug. 20, 2007, DE 7.)

On May 15, 2008, Defendants moved to dismiss Plaintiff's complaint in the instant action.  In response, Plaintiff moved to amend the complaint, to add new Defendants, and to

_____

[1] Plaintiff's "Reply to the Opinion and Order of Judge Kimba Wood Dated March 31, 2009," has been construed as his Second Amended Complaint.

assert new federal and state law claims against Defendants.  On June 24, 2008, the Court granted Plaintiff's motion to amend the complaint and deemed Defendants' motion to dismiss withdrawn.

On July 7, 2008, Plaintiff filed his First Amended Complaint.  On July 21, 2008, Defendants moved, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), to dismiss the First Amended Complaint on the grounds that it (1) failed to state a claim upon which relief can be granted, and (2) failed to plead the fraud claims with sufficient particularity.

The Court granted Plaintiff three extensions of time, amounting to more than six months, to file an opposition to Defendants' motion to dismiss the First Amended Complaint.  The Court did not receive an opposition memorandum from Plaintiff.  The Court decided Defendants' motion without the benefit of briefing from Plaintiff.[2]

On March 31, 2009, the Court issued an Opinion and Order, granting in part and denying in part Defendants' motion to dismiss the First Amended Complaint.  All claims were dismissed with the exception of claims asserting that the NYCHA Defendants (1) violated the Brooke Amendment of the United States Housing Act, and (2) denied Plaintiff his Fourteenth Amendment right to equal protection.  The Court granted Plaintiff leave to amend the First Amended Complaint, with some limitations, and ordered that an amended pleading be filed by May 15, 2009.  On May 18, 2009, Plaintiff filed his "Reply to the Opinion and Order of Judge Kimba Wood Dated March 31, 2009."  This submission pled all claims included in the First Amended Complaint, and added new defendants, some named and some unnamed, and new causes of action.  Defendants properly construed Plaintiff's submission as a Second Amended Complaint.

---

[2] Plaintiff submitted a letter to the Court asserting that he did in fact respond to Defendants' motion to dismiss the First Amended Complaint.  The Court never received this briefing and found that it was, in any event, untimely.

On August 10, 2009, Defendants moved to dismiss Plaintiff's Second Amended Complaint or, in the alternative, for summary judgment as to all claims. Defendants provided proper notice to Plaintiff that the Court could treat the motion to dismiss as a motion for summary judgment because it is supported in part by materials outside of the pleadings.

Plaintiff responded to Defendant's motion with an extensive submission, including several exhibits, on December 18, 2009. Plaintiff has cross-moved for summary judgment with respect to his claim of fraud under New York State common law.

Both parties have received multiple extensions on briefing deadlines. (DE 46, 47, 52, 53, 54, 56, 57.) The parties' motions were fully briefed on January 29, 2010. Plaintiff sought to make additional submission, including a lengthy brief entitled "Supplemental Information FRCP 15." The Court accepted Plaintiff's supplemental submissions.

**III. Factual Background**

Since November 1996, Plaintiff has been a resident at Douglass Houses, a NYCHA housing development in Manhattan. (Def. Ex. A.) In August 2004, Plaintiff's monthly rent was set at $191.00. The rent was one-twelfth of 30% of his adjusted net income, amounting to $7652.00, which he received through Social Security and Supplemental Security Income benefits.

In August 2005, Plaintiff failed to submit his income review documentation. NYCHA residents are required to submit income review documentation on an annual basis so that rental fees may be recalculated and updated as appropriate. NYCHA thus increased Plaintiff's monthly rent to $668.00, as permitted by law and NYCHA policy. When Plaintiff submitted the required documentation in October 2005, Plaintiff's rent was promptly adjusted to $196.00 per month, or one-twelfth of 30% of his adjusted net income of $7832.00. (Def. Ex. B.) His account was duly

4

credited to reflect the appropriate monthly rent.  Plaintiff did not submit income review

documentation for 2006 or 2007.  (Def. Ex. D.)  Nevertheless, his rent remained at $196.00 per

month.

      For several months since 2005, Plaintiff failed to timely pay his rent.  In response,

NYCHA commenced rent non-payment proceedings against Plaintiff in the Housing Part of the

Civil Court of the City of New York in October 2005 and again in November 2006.  These

proceedings ended with Plaintiff's payment of the rent amounts owed.  (Def. Exs. E & F.)

      On September 20, 2007, a NYCHA Social Services Department staff member visited

Plaintiff's apartment based upon a "Referral for NYCHA Social Services" submitted by the

Douglass Houses Management Office.  The referral provided that Plaintiff was four months

behind on rent payments.  NYCHA social workers and an Adult Protective Services case worker

made a number of attempted home visits and phone calls to Plaintiff, with limited success.  On

December 6, 2007, NYCHA Social Services closed the case and ceased contact with Plaintiff.

The Case Closing Summary stated:

> On September 20, 2007, a Social Services Worker [SSW]
> attempted a home visit, [but] there was no answer.  SSW left a
> contact letter.  On 9-20-07 SSW received a telephone call from Mr.
> O'Neill and he stated that he wanted no further contact with
> anyone from New York City Housing Authority.  He felt he was
> being harassed; SSW continued to monitor [Plaintiff] with
> Management.  SSW last contact with Management, at the end of
> November 2007, revealed that [Plaintiff] had paid $980.00 in rent
> arrears which makes him current at this time.  Due to the arrears
> rent being paid and [Plaintiff's] refusal of Social Services, no
> further outreach is needed at this time; therefore, the case is being
> closed.

(Def. Ex. H.)

      During this same period of time, starting in March 2006, NYCHA initiated and pursued

administrative proceedings against Plaintiff for chronic rent delinquency.  Following several

adjournments and a hearing at which Plaintiff did not appear, a hearing officer issued a decision supporting termination of Plaintiff's tenancy.  The NYCHA Board approved the hearing officer's decision on June 18, 2008.  (Def. Ex. L.)  NYCHA then commenced a holdover proceeding in the Housing Part of the Civil Court of the City of New York, seeking to evict Plaintiff from his NYCHA apartment.  The Civil Court granted a warrant of eviction but stayed the warrant until July 31, 2009.  Plaintiff has subsequently been evicted from his NYCHA apartment.  (Pl. Letter, Jan. 26, 2010.)

In his Second Amended Complaint, Plaintiff brings numerous claims against Defendants related to the above events, alleging violations of: (1) the Brooke Amendment of the United States Housing Act; (2) Title VI of the Civil Rights Act of 1964; (3) Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973; (4) the Fair Housing Act; (5) the Fourteenth Amendment of the United States Constitution; (6) Sections 1985 and 1986 of Title 42 of the United States Code; (7) the Racketeering Influenced and Corrupt Organizations Act; and (8) the Fourth, Fifth, and Eighth Amendments of the United States Constitution.  Plaintiff also brings state law claims that include: (1) malicious prosecution; (2) abuse of process, (3) intentional and negligent infliction of emotional distress; (4) invasion of privacy; (5) fraud and misrepresentation; and (6) intentional prima facie tort.

For the reasons stated below, the Court grants Defendants' motion for summary judgment as to all Plaintiff's claims.

## IV. Standard of Review on Motions before the Court

### A.   Parties' Motions Treated as Motions for Summary Judgment

If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

6

Federal courts have discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a motion to dismiss.  A court has "complete discretion in determining whether to convert the motion to one for summary judgment."  Carione v. United States, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (internal quotation marks and citations omitted); see also Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) ("A court may indeed convert a motion for judgment on the pleadings into a motion for summary judgment").  The parties must have notice that a motion will be treated as a motion for summary judgment.  See Kopec v. Coughlin, 922 F.2d 152, 154 (citing Fonte v. Bd. of Mgrs. of Cont. Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988)).

The Court treats the pending motions as motions for summary judgment.  Defendants have submitted a motion to dismiss, or in the alternative, for summary judgment.  Defendants timely provided a "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings" that notifies Plaintiff that the motion may be treated as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff has demonstrated that he understands this fact.  He has submitted to the Court a cross-motion for summary judgment, as well as supporting exhibits totaling some fifty pages.  See Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (noting that where a non-moving party submits exhibits and affidavits in its response papers, it cannot claim to be surprised by a court's treating the motion as one for summary judgment).  The Court has considered both parties' materials outside of the pleadings and thus rules on the pending motions as ones for summary judgment.

### B.   Standard of Review on Motion for Summary Judgment

Summary judgment is appropriate only if the record before the court establishes that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c).  A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d Cir. 2008); see also Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Fed. R. Civ. P. 56(e).  The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted); see also Hughes v. Rowe, 449 U.S. 5, 10 (1980) (noting that a pro se party's pleadings must be liberally construed in its favor and are held to a less stringent standard than the pleadings drafted by lawyers).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).  A plaintiff who proceeds pro se must comply with the procedural and substantive rules and, to survive a motion to dismiss or for summary judgment, a pro se complaint, like any other complaint, "must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

**IV. Analysis of Federal Law Claims**

    **A.  Brooke Amendment of the United States Housing Act**

        1.  Legal Standard

The Brooke Amendment, an amendment to the United States Housing Act of 1937, provides a ceiling on the rent that can be charged to residents living in certain public housing projects. See 42 U.S.C. § 1437(a). Monthly rent payments in the public housing projects are limited by federal law to (1) 30% of monthly adjusted income, or (2) 10% of monthly income, whichever is higher.[3] See 42 U.S.C. § 1437a(a)(1).

In addition to rent, a municipality is permitted "to add certain fees to cover excess utility use, late payments and maintenance charges." Binghamton Hous. Auth. v. Douglas, 217 A.D.2d 897, 898 (3rd Dep't 1995); see also Beckham v. New York City Hous. Auth., 755 F.2d 1074, 1078 n.2, 1080 (2d Cir. 1985); Watertown Hous. Auth. v. Kirkland, 2 Misc. 3d 280, 281 (N.Y. City Ct. 2003). These fees are not rent within the meaning of the Brooke Amendment. See 24 C.F.R. § 966.4(b). To collect these fees from a tenant, the municipality must institute proceedings that are distinct from proceedings in which it seeks unpaid rent. Binghamton Hous. Auth., 217 A.D. 2d at 898-99.

Allegations of Brooke Amendment violations may be brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). See Wright v. Roanoke Redevelopment & Hous. Auth., 479 U.S. 418, 423-24 (1987). A plaintiff seeking relief under Section 1983 must demonstrate that (1) defendants acted under color of state law, and (2) defendants' actions deprived plaintiff of a constitutional right or privilege. See Williams v. New York City Hous. Auth. & Local 237, I.B.T., No. 05-2750, 2007 WL 4215876, at *4-5 (S.D.N.Y. Nov. 30, 2007).

To establish municipal liability under Section 1983, a plaintiff must show that the alleged unlawful action was implemented or executed pursuant to a governmental policy or custom. See Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690-91 (1978). A

---

[3] The Brooke Amendment sets out a third method for calculating the ceiling on rent that does not apply in the instant case.

municipality's alleged failure to train or supervise municipal employees can violate Section 1983 when the failure is a result of deliberate indifference to a plaintiff's Constitutional rights.  See City of Canton v. Harris, 489 U.S. 378, 392 (1989).  A plaintiff may bring a Section 1983 claim against the municipal entity or a public servant of the entity in his or her official capacity.  See Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir. 2007).

 2. Application of Legal Standard to Facts

 In his Second Amended Complaint, Plaintiff alleges that NYCHA's General Counsel and NYCLD's lead counsel failed to train and supervise department employees to prevent violations of the Brooke Amendment.  Plaintiff also alleges that NYCHA Defendants improperly "recast" non-rent charges as rent in a way that resulted in charges in excess of the allowable 30% of adjusted income. [4]

 The Court finds that there is no evidence supporting Plaintiff's claim that NYCHA violated the Brooke Amendment of the Housing Act.  The evidence makes clear that Defendants have consistently imposed, and ultimately collected, rent charges equaling 30% of Plaintiff's adjusted income.  From August 2004 until August 2005, Plaintiff's monthly rent was set at $191.00, or 30% of his adjusted income based on his annual government benefits in the amount of $7652.00.  Once Plaintiff submitted updated income documentation in October 2005, Plaintiff's monthly rent was raised to $196.00, or 30% of his adjusted income based on his annual government benefits in the amount of $7832.00.  (Def. Ex. B.)  NYCHA's documentation and Plaintiff's billing records confirm that the calculated rental fees were based solely on these

---

[4] In the Court's Opinion and Order of March 31, 2009, the Court found that Plaintiff had sufficiently pled his Section 1983 claim that Defendants violated the Brooke Amendment as applied to the calculation of Plaintiff's rent.  Defendants' motion to dismiss this claim was therefore denied.

legally permissible calculations.  (Pl. Ex. 10; Def. Ex. C.)[5]  The state housing court has fully considered and adjudicated the parties' disputes as to rent non-payment and appropriate rental charges. (Def. Exs. E & F.)

Because Plaintiff has failed to establish a genuine issue of material fact, there is no ground for a Section 1983 action alleging that Defendant violated the Brooke Amendment pursuant to a municipal policy or custom.  Accordingly, the Court grants Defendants' motion for summary judgment on this claim.

**B.   Title VI of the Civil Rights Act of 1964**

1.   Legal Standard

Title VI of the Civil Rights Act of 1964 provides that no person may, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

2.   Application of Legal Standard to Facts

There is no allegation or evidence that Defendants have discriminated against Plaintiff on the basis of his race, color, or national origin.  The instant claims of discrimination are based only on his alleged disability.  Plaintiff has not stated a Title VI claim on which relief may be granted.  Dismissal is therefore warranted.

**C.   Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973**

1.   Legal Standard

---

[5] NYCHA properly included in the calculation of money owed by Plaintiff some "legal fees" and costs related to a NYCHA request for a warrant of eviction.  None of these imposed fees were the basis for any actions brought against Plaintiff.  All such fees were, in any event, waived by NYCHA in the course of state housing court legal proceedings.  (Def. Ex. E.)

To recover on a claim brought under Title II of the Americans with Disabilities Act (ADA), a plaintiff must establish that: (1) he is a "qualified individual" with a disability; (2) the defendants are subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability.  Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).[6]  A party qualifies for ADA protection if he: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.  Colwell v. Suffolk Cty. Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998).

To establish a violation under Section 504 of the Rehabilitation Act ("Section 504"), a plaintiff must present sufficient evidence of the elements outlined above, and, in addition, the defendants must receive federal funding.  Id.; 29 U.S.C. § 794(a).

2.  Application of Legal Standard to Facts

Plaintiff alleges that he suffers from disabling depression,[7] and that Defendants discriminated against him based on this condition.  Plaintiff asserts that he faced three types of discrimination because of his disability.  First, he claims that Defendants have used "trickery or screwy arithmetic to confuse [him] because it is believed . . . it is [his] nature to be confused," resulting in the unfair calculation and imposition of NYCHA rental fees.  Second, Plaintiff

---

[6] The Court notes that Congress has enacted the ADA Amendments Act ("ADAAA"), which became effective on January 1, 2009.  The ADAAA expand the class of individuals entitled to protection under the ADA.  Numerous circuit and district courts have held that the ADAAA does not apply to conduct taking place prior to the effective date of the ADAAA.  See EEOC v. Agro Distrib., 555 F.3d 462, 469-70 n.8 (5th Cir. 2009); Smith v. St. Luke's Roosevelt Hosp., No. 08-4710, 2009 WL 2447754, at *13 (S.D.N.Y. Aug. 11, 2009); White v. Sears, Roebuck & Co., No. 07-4286, 2009 WL 1140434 at *5 (E.D.N.Y. Apr. 27, 2009); Moran v. Premier Educ. Group, LP, 599 F. Supp. 2d 263, 271-72 (D. Conn. 2009).  In this case, the Court's conclusion would be the same under the ADA or the ADAAA.

[7] Plaintiff submits documentation from his treating physician, Dr. Mark J. Evans, Ph.D., that states that Plaintiff suffers from "the condition of Major Depression, Recurrent, Moderate . . . .  This disorder has had a significant disabling effect on [Plaintiff's] life despite his ongoing and committed efforts to manage it."  (Pl. Ex. 8).

contends that Defendants diminished his "quiet use and enjoyment" of his home by "pounding" on his door during visits by social workers and case workers from city government agencies; these workers were conducting visits related to Plaintiff's non-payment of rent.  Third, Defendant asserts a number of claims of misconduct by government actors, including judges in the housing court and attorneys working in the pro se office of the United States District Court for the Southern District of New York.

Because the Court finds that there is no evidence of discrimination, the Court need not determine if there is sufficient evidence that Plaintiff is protected by the ADA or Section 504. The Court finds that summary judgment is warranted on Plaintiff's ADA and Section 504 claims on the ground that there is no evidence that Plaintiff was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or was otherwise a discriminated against by Defendants.

Plaintiff has failed to set forth any evidence that would establish a genuine dispute of material fact with respect to his claims.  As discussed earlier in this Opinion and Order, all calculations and impositions of rent payments were appropriate and cannot be considered discriminatory.  There is also no evidence of discriminatory treatment in the home visits and telephone calls made by NYCHA social workers and other city employees related to Plaintiff's failure to pay rent.  The evidence conclusively establishes that Defendants' interactions with Plaintiff were brief, appropriate, and based on legitimate referrals from NYCHA employees. Finally, the Court finds no valid cause of action, and no actual evidence, of discriminatory conduct by any judge in the state housing court or by the pro se office attorneys in the Southern District of New York.  The Court therefore grants Defendants' motion for summary judgment on Plaintiff's ADA and Section 504 claims.

**D.  Fair Housing Act**

    1.  <u>Legal Standard</u>

The Fair Housing Act ("FHA") makes it unlawful to discriminate against a person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities related to the dwelling, on the basis of his disability.  42 U.S.C. § 3604(b) & (f)(2)(A); <u>Shapiro v. Cadman Towers, Inc.</u>, 51 F.3d 328, 333 (2d Cir. 1995).  Discrimination prohibited by the FHA includes the refusal to make "reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford [the individual] an equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

    2.  <u>Application of Legal Standard to Facts</u>

Plaintiff contends that (1) Defendants discriminated against him in the terms, conditions, and privileges related to his rental agreement on the basis of his disability, and (2) Defendants denied him an equal opportunity to use and enjoy his dwelling by failing to make reasonable accommodations or otherwise.  The Court finds no evidentiary basis for these claims.  The rent calculations of Plaintiff's rent were appropriate.  The social service interventions and legal proceedings initiated against Plaintiff were based on his non-payment or late payment of rent owed to NYCHA.  Although Plaintiff may have been inconvenienced or upset by these actions, they were justified and not based on any disability that Plaintiff may have or that Defendants may have perceived Plaintiff to have.

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's FHA claim.

**E.  42 U.S.C. §§ 1985 and 1986**

    1.  <u>Legal Standard</u>

Section 1985(3) of Title 42 of the United States Code provides in part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To state a cause of action under Section 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.  See Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999); Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-87 (2d Cir. 1988). The conspiracy must be motivated by "some racial or . . . otherwise class-based, invidious discriminatory animus."  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (quoting United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829 (1983)).

Section 1986 provides for a cause of action against anyone who, having knowledge of the wrongful conspiratorial conduct mentioned in Section 1985 and "having power to prevent or aid in preventing the commission of the same," neglects or refuses to prevent those acts that may be prevented by the exercise of "reasonable diligence." See Brown v. City of Oneonta, 221 F.3d

329, 342 (2d Cir. 2000).  Thus, a Section 1986 claim must be predicated upon a valid Section

1985 claim.  See id.; Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir. 1978).

> 2.  Application of Legal Standard to Facts

Plaintiff has failed to sufficiently plead any conspiracy to deprive him of equal protection

of the laws or equal rights and privileges.  He sets forth general allegations that New York City

agencies and agency employees conspired to interfere with Plaintiff's legal proceedings and to

disrupt the "quiet enjoyment" of his NYCHA apartment.  (Second Am. Compl. ¶¶ 201-208, 254.)

The allegations of conspiracy are stated in vague and conclusory terms and are without

evidentiary support.  Plaintiff has also failed to assert, with particularity, overt acts taken by

defendants that were related to the alleged conspiracy.  The Court can discern no evidence of a

wrongful or conspiratorial intent or conduct.

Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's

Section 1985 claim.  See Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003); Thomas, 165

F.3d at 147.  Because the Court grants summary judgment in favor of Defendants as to Plaintiff's

Section 1985 claim, summary judgment with respect to the Section 1986 claim is also warranted.

**F.  Racketeering Influenced and Corrupt Organizations Act (RICO)**

In the Second Amended Complaint, Plaintiff adds a new cause of action pursuant to the

Racketeer Influenced and Corrupt Organizations Act (RICO).  The RICO statute prohibits

racketeering-related activities.  18 U.S.C. § 1962(a)-(d).  To state a RICO claim under Section

1962(b) and (c), a plaintiff must plead seven elements: (1) that a defendant, (2) through the

commission of two or more acts (3) constituting a pattern (4) of racketeering activity, (5) directly

or indirectly invests in, or maintains an interest in, or participates in, (6) an enterprise, (7) the

activities of which affect interstate or foreign commerce.  See Jordan (Berm.) Inv. Co. v. Hunter

Green Invs. Ltd., 154 F. Supp. 2d 682, 690 (S.D.N.Y. 2001) (citing Moss v. Morgan Stanley,

Inc., 719 F.2d 5, 17 (2d Cir. 1983)).

The scope and basis of Plaintiff's claim is unclear.  Plaintiff variously alleges RICO

violations against the pro se office for the United States District Court for the Southern District

of New York, the New York City Comptroller's Office, the New York City Human Resources

Administration, the New York City Civil Court's Sheriff's Office, NYCHA, and NYCLD.

(Second Am. Compl. ¶ 277.)  Plaintiff provides two vaguely defined injuries stemming from the

alleged misconduct: (1) personal injury from "malicious court proceedings and administrative

hearings," and (2) property injury related to "unreturned property and interference [with] past,

present and future enjoyment of life interests including employment relations."  (Second Am.

Compl. ¶ 278.)

Having reviewed the evidence submitted by the parties, the Court finds no support for

Plaintiff's RICO claims in the record.  The Court dismisses Plaintiff's RICO claims.

**G.  Constitutional Claims**

1.  Fourth, Fifth, Sixth, and Eighth Amendment Claims

In the Second Amended Complaint, Plaintiff asserts that Defendants violated a number of

his Constitutional rights, including his Fourth, Fifth, Sixth, and Eighth Amendment rights.

Plaintiff sets forth bald assertions and conclusions of law that are wholly lacking in specific

factual support as to each of these claims.  Such bald assertions and conclusions of law are

insufficient to defeat a motion to dismiss.  See Reddington v. Staten Island Univ. Hosp., 511

F.3d 126, 131 (2d Cir. 2007); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

Plaintiffs' Fourth, Fifth, Sixth, and Eighth Amendment claims are without merit.

Plaintiff's Fourth Amendment claim fails because the initiation of housing court proceedings

does not constitute a seizure within the meaning of the Fourth Amendment.  See Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999).  Plaintiff's Fifth Amendment claim fails because no claims are made against the federal government, to which the Fifth Amendment applies.  See Taylor v. Evans, 72 F. Supp. 2d 298, 305 n.3 (S.D.N.Y. 1999); Kia P. v. McIntyre, 2 F. Supp. 2d 281, 286 n.2 (E.D.N.Y. 1998).  Plaintiff's Sixth and Eighth Amendment claims fail because these Constitutional provisions apply only to criminal proceedings.  There are no criminal proceedings at issue in this lawsuit.[8]

Accordingly, the Court dismisses Plaintiff's claims of violations of the Fourth, Fifth, Sixth, and Eighth Amendments.

2.  Fourteenth Amendment Rights

a.  *Procedural Due Process*

Plaintiff claims that NYCHA's actions violated his right to procedural due process.  The Due Process Clause of the Fourteenth Amendment requires that a person be "afforded the opportunity for a hearing prior to being deprived of a constitutionally protected liberty or property interest."  Patterson v. City of Utica, 370 F.3d 322, 329 (2d Cir. 2004).  In the instant case, due process requirements have been met with respect to all relevant actions taken by NYCHA.  The record demonstrates that Plaintiff was provided with due process throughout the proceedings in the New York State housing court.  The housing court heard and, in many cases, granted relief in favor of Plaintiff, including staying the execution of warrants of eviction based on non-payment of rent and granting Plaintiff an extension to pay rent that he owed to NYCHA. (Def. Exs. E & F.)  Plaintiff's claims that these court proceedings were "bullying sessions" (Second Am. Compl. ¶ 224) is unsupported by the evidentiary record.  The Court identifies no

_____

[8] In his response to Defendants' motion, Plaintiff appears to add claims under the First and Ninth Amendment.  These claims are not included in the Second Amended Complaint and are, in any event, without merit.  To the extent they are in the pleadings, these claims are dismissed.

systemic or individualized denials of procedural due process under the Fourteenth Amendment.
See Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984).

The Court grants Defendant's motion for summary judgment on this claim.

     *b.  Equal protection*

Plaintiff next alleges that Defendants have singled him out with respect to their
calculations of his monthly rent and social workers' visits to his home, in violation of his
Fourteenth Amendment right to equal protection.

The Court applies a "rational-basis" review to an equal protection claim based on
disability discrimination, because disabled persons are not a "suspect" class.  See Bd. of Trs. of
the Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001).  Here, on Defendants' motion for
summary judgment, the Court must determine whether Plaintiff has demonstrated a genuine
issue of material fact as to whether the challenged NYCHA policy or conduct is rationally
related to a legitimate government interest.  See Heller v. Doe, 509 U.S. 312, 320-21 (1993)
(asserting that Plaintiff has the burden of proof to show no rational relationship between an
allegedly discriminatory policy and a legitimate government purpose).  To the extent Plaintiff
sets forth a "class of one" claim, he is required to show intentionally different treatment from
others similarly situated with "'no rational basis for the difference.'"  Harlen Assocs. v.
Incorporated Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (quoting Village of
Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).

The Court finds that Plaintiff has failed to present evidence that Defendants' actions are
not rationally based on a legitimate government interest.  The involvement of NYCHA Social
Services in Plaintiff's case – that is, Social Services Department employees' home visits and
communications with Plaintiff – was based on a referral made in accordance with NYCHA's

established policy for NYCHA tenants with rent arrears.  (Def. Ex. K, NYCHA Gen. Mgmt. Directive GM-3627.)  NYCHA's actions were warranted by Plaintiff's failure to pay rent and to submit required documentation in a timely way.  (Def. Ex. H.)  NYCHA Social Services Department employees have the responsibility to provide support services and assistance to residents in a number of circumstances, including where there is: chronic delinquency in the payment of rent, at-risk evictions, problems associated with elderly person[s] living alone, and problems associated with mentally or physically incapacitated persons.  (Def. Ex. K.)  Such a NYCHA policy and practice is generally appropriate.  See generally Blatch v. Hernandez, 360 F. Supp. 2d 595 (S.D.N.Y. 2005) (discussing the role of NYCHA Social Services to address problems related to mentally disabled NYCHA tenants, including circumstances of non-payment of rent).

There is no evidentiary basis for Plaintiff's claim that Defendants' actions violated his Fourteenth Amendment equal protection rights.  The Court thus grants summary judgment in Defendants' favor on this claim.

## V.  Analysis of State Law Claims

### A.  Supplemental Jurisdiction

Under Section 1367(a) of Title 28 of the United States Code, a federal court has jurisdiction to decide state law claims over which it would not otherwise have jurisdiction, if those claims are sufficiently related to claims over which the court does have jurisdiction and constitute part of the same case or controversy.  The statute provides circumstances under which a federal court may choose not to exercise such supplemental jurisdiction: (1) the state claim raises a novel or complex issue of state law; (2) the state claim substantially predominates over the claim over which the court has original jurisdiction; (3) the district court has dismissed all

claims over which it had original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).  The Supreme Court has articulated factors that inform the discretionary exercise of supplemental jurisdiction.  A district court "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Where a pendent state law claim turns on novel or unresolved questions of state law, principles of federalism and comity may dictate that such a claim be left for decision by the state courts, particularly where the related federal claims have been dismissed.  See Rounseville v. Zahl, 13 F.3d 625, 631 (2d Cir. 1994); Morse v. Univ. of Vermont, 973 F.2d 122, 127-28 (2d Cir. 1992).

In this case, the Court exercises supplemental jurisdiction over Plaintiff's state law claims.  Exercising supplemental jurisdiction in the instant case is consistent with interests of judicial economy, convenience, and fairness to the litigants, and does not conflict with interests of comity.  See Mauro v. Southern New Eng. Telcomms., Inc., 208 F.3d 384, 388 (2d Cir. 2000). There are no novel or unresolved questions of state law implicated in this litigation.  The parties have invested substantial resources into the federal suit, including briefing on multiple dispositive motions and two amended pleadings.  This Court now possesses great familiarity with the facts of the case and Plaintiff's claims.  Interests of fairness and judicial economy are best served by the Court's exercise of supplemental jurisdiction over the state law claims. Supplemental jurisdiction is therefore proper.  The Court thus considers each of Plaintiff's state law claims in turn.

**B.  Malicious Prosecution**

The Court has previously denied Plaintiff leave to amend with respect to his claim that he was maliciously prosecuted on the ground that such an amendment would be futile.  (Op. & Order at 32 n.18, Mar. 31, 2009.)  A claim for malicious prosecution is available only where a defendant has commenced or continued a criminal proceeding against the plaintiff.  See Smith-Hunter v. Harvey, 95 N.Y. 2d 191, 195 (2000); Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999).  Defendants do not have the authority to prosecute criminally, and Plaintiff has not been criminally charged with respect to the facts at issue in this case.  Plaintiff's claim is without merit, and, to the extent it is alleged in the Second Amended Complaint, it is dismissed.

**C.  Abuse Of Process**

1.  Legal Standard

For a claim of abuse of process, a plaintiff must establish that: (1) there was regularly issued process compelling the performance or forbearance of some prescribed act; (2) the defendant activating the process was moved by a purpose to do harm without excuse or justification; and (3) the defendant sought some collateral advantage or corresponding detriment to the plaintiff that is outside the legitimate ends of the process.  See Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y. 2d 397, 403 (1975); Savino v. City of New York, 331 F.3d 63, 70 (2d Cir. 2003).

2.  Application of Legal Standard to Facts

Plaintiff's claim of abuse of process fails because there is no evidence that any Defendant initiated any legal action for the purpose of doing the Plaintiff harm without justification, or for the purpose of gaining some illegitimate collateral advantage.  All legal proceedings relating to Plaintiff's non-payment of rent were legitimate and consistent with NYCHA policy and practice.

Plaintiff argues that eviction proceedings were initiated in order to harass him.  Even if this claim were supported by the evidence, "malicious motive alone . . . does not give rise to a cause of action for abuse of process."  Curiano v. Suozzi, 63 N.Y. 2d 113, 117 (1984).  In any event, the Court finds that no Defendant acted with a malicious motive.  Defendants took appropriate steps to enforce payment of rent owed or to obtain Plaintiff's eviction, based on their reasonable belief that Plaintiff had substantial rent arrears.  There is no evidentiary support for the claim that any Defendant sought a collateral advantage or detriment outside the legitimate ends of the eviction process.

Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's claim of abuse of process.

### D.  Intentional and Negligent Infliction of Emotional Distress

1.  Legal Standard

Under New York State Law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.  See Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (internal citations omitted).

To state a cause of action for negligent infliction of emotional distress, the Plaintiff must allege negligent conduct that was also "extreme and outrageous."  See Campoverde v. Sony Pictures Entm't, NO. No. 01-7775, 2002 WL 31163804, at *11 (S.D.N.Y. Sept. 30, 2002) ("plaintiffs must allege conduct that 'was so outrageous and extreme as to support a claim for emotional distress,' which is the same standard used in intentional infliction of emotional distress cases") (quoting Acquista v. New York Life Ins. Co., 730 N.Y.S. 2d 272, 279 (1st Dep't 2001));

<u>Dillon v. City of New York</u>, 704 N.Y.S. 2d 1, 7 (1st Dep't 1999) ("We have applied the same standard to both the intentional and negligence theories of emotional distress."). Defendants' actions must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Dillon</u>, 704 N.Y.S. 2d at 7 (internal citations omitted).

New York courts have set a "high threshold for conduct that is 'extreme and outrageous'" in considering whether a party has established a claim of intentional or negligent infliction of emotional distress. <u>See</u> Bender, 78 F.3d 787, 790 (2d Cir. 1996); <u>Ponticelli v. Zurich Am. Ins. Group</u>, 16 F. Supp. 2d 414, 440 (S.D.N.Y. 1998) ("the standard for extreme and outrageous conduct is extremely difficult to satisfy").[9]

2.   <u>Application of Legal Standard to Facts</u>

Plaintiff argues that Defendants engaged in conduct that is actionable as either intentional or negligent infliction of emotional distress. He enumerates a number of psychological and physical harms allegedly stemming from Defendants' conduct, including shingles, headaches, "stress eating," nervousness, a sense of dread, anguish, embarrassment, and humiliation.

The Court need not make a finding on Plaintiff's difficult physical and emotional circumstances. There is no evidentiary basis for Plaintiff's claims that Defendants' conduct constituted intentional or negligent infliction of emotional distress. As discussed earlier in this Opinion and Order, Defendants' conduct – including the attempted social services interventions, the initiation and continuation of legal proceedings based on Plaintiff's non-payment of rent, and

---

[9] The Court notes that public policy bars claims for intentional infliction of emotional distress against government entities. <u>Batista v. City of New York</u>, No. 05-8444, 2007 WL 2822211, at *8 (S.D.N.Y. Sept. 25, 2007). Therefore, the Court construes this claim as against the individual Defendants and not any New York City agencies.

the actions of administrative and judicial employees in the various legal proceedings at issue here – was appropriate and cannot be considered "extreme or outrageous."

The Court therefore grants Defendants' motion for summary judgment with respect to Plaintiff's claims of intentional and negligent infliction of emotional distress.[10]

### E.  Invasion of Privacy

Plaintiff alleges that Defendants committed a common law tort by invading his privacy. New York State common law does not recognize the tort of invasion of privacy.  Howell v. New York Post Co., 81 N.Y. 2d 115, 123 (1993) ("We have no common law of privacy.").  The Court dismisses Plaintiff's invasion of privacy claim.

### F.  Fraud and Misrepresentation

#### 1.  Legal Standard

Under New York State law, to state a claim for common law fraud, Plaintiff must allege: "(1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance."  City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 454 (2d Cir. 2008); Lama Holding Co. v. Smith Barney Inc., 88 N.Y. 2d 413, 421 (1996).

Plaintiff must plead with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b).  Pleading with particularity requires the plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

---

[10] In his briefing, Plaintiff appears to assert a tort claim of common law assault.  (Pl. Resp. ¶ 89.)  The claim's factual basis – the alleged "pounding" at the door of NYCHA Social Services workers – is insufficient to establish a genuine issue of material fact whether any NYCHA Social Services workers intentionally placed Plaintiff in fear of imminent harmful or offensive contact when they attempted to contact or meet with him pursuant to a properly executed referral for NYCHA social services.  (Ex. H). See Charkhy v. Altman, 678 N.Y.S. 2d 40, 41 (1st Dep't 1998).  The assault claim thus also warrants dismissal.

and when the statements were made, and (4) explain why the statements were fraudulent."

Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v. Polar Molecular

Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

      Any claim of fraud committed against a court must be made in the tribunal that was

allegedly defrauded.  See Wagner Spray Tech Corp. v. Wolf, 113 F.R.D. 50, 52 (S.D.N.Y.

1986); Pfotzer v. Amercoat Corp., 548 F.2d 51, 52-53 (2d Cir. 1977)).  Procedures are available

to challenge a state court judgment on the basis of fraud upon the court.  See N.Y. C.P.L.R. §

5015 ("The court which rendered a judgment or order may relieve a party from it upon such

terms as may be just, on motion of any interested person . . . upon the ground of . . . fraud,

misrepresentation, or other misconduct of an adverse party.").  A federal district court is

prevented from reviewing a fraud claim that is directly related to a final state court judgment.

See Ruiz v. Comm'r of Dep't of Transp., 858 F.2d 898, 902 (2d Cir. 1988) ("As to the parties in

a litigation . . . a judgment on the merits by a court of competent jurisdiction is conclusive in any

subsequent action of the issues of fact and questions of law necessarily decided.")

      2.  Application of Legal Standard to Facts

      In the Second Amended Complaint, Plaintiff alleges that NYCHA employees committed

fraud by "rewriting a tenant ledger" in order to improperly change the amount of rent owed by

Plaintiff.  (Second Am. Compl. ¶ 232.)  Other Defendants are also alleged to have "manipulated"

or "manufactured" the amounts owed by Plaintiff with respect to his rent.  (Id. ¶¶ 207, 232.)

      Plaintiff has failed to establish the required elements of a common law fraud claim.

Plaintiff relies on an "inferential notion" that a NYCHA employee would "rewrite a tenant

ledger[] for no other reason than he can rewrite a tenant ledger."  (Id. ¶ 233.)  Construing the

pleadings liberally, Plaintiff contends that the objective of the allegedly fraudulent conduct was

to obtain an adverse judgment against Plaintiff in legal actions brought by NYCHA in the state housing court.  Plaintiff's claims suggest that the defrauded party was the housing court that imposed judgments adverse to Plaintiff based on the NYCHA and NYCLD documentation and representations submitted.  The record demonstrates that Plaintiff had the opportunity to challenge and did in fact challenge NYCHA's calculations of rent arrears in the housing court proceedings.  (Def. Ex. F.)  The claims of fraudulent conduct during non-payment and eviction proceedings are not properly before this Court and must be dismissed.  See Wagner Spray Tech Corp., 113 F.R.D. at 52.

Furthermore, there is no basis in the pleadings, or in the evidentiary record, for a claim that Defendants knowingly made any misrepresentation of material fact for the purpose of inducing Plaintiff's reliance.  Plaintiff's submissions and the extensive state court record make evident that Plaintiff has consistently challenged Defendants' statements and rent calculations. Absent any evidence of fraudulent representations by Defendants and Plaintiff's detrimental reliance on such representations, Plaintiff's claim of fraud fails.

The Court grants Defendant's motion for summary judgment on this claim.  Plaintiff's cross-motion for summary judgment on this claim is denied.

### G. Intentional Prima Facie Tort

1.  Legal Standard

Under New York State law, a claim for prima facie tort must allege four elements: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful.  Emanuele v. Town of Greenville, 143 F. Supp. 2d 325, 335 (S.D.N.Y. 2001) (quoting Howell v. N.Y. Post Co., 81 N.Y. 2d 115, 121 (1993)); Curiano, 63 N.Y. 2d at 117.  "Liability occurs only where the conduct is so

outrageous in character, so extreme in degree, as to be atrocious, to exceed all possible bounds of decency, and to be utterly intolerable in a civilized society."  Emanuele, 143 F. Supp. 2d at 335 (quoting Murphy v. Am. Home Prods. Corp., 58 N.Y. 2d 293, 303 (1983)).

        2.   Application of Legal Standard to Facts

Plaintiff's claim of prima facie tort fails because neither the pleadings nor the evidence support a finding that Defendants intentionally inflicted harm upon Plaintiff without excuse or justification.  The rent bills, calculations, and related housing court proceedings show that Defendants were justified in bringing non-payment and eviction proceedings against Plaintiff. There can be "no recovery in prima facie tort unless malevolence is the sole motive for [a] defendant's otherwise lawful act or, in Justice Holmes' characteristically colorful language, unless defendant acts from 'disinterested malevolence.'"  Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y. 2d 314, 333 (1983) (quoting Am. Bank & Trust Co. v Fed. Reserve Bank of Atlanta, 256 U.S. 350, 358 (1921)) (emphasis added).  In the instant case, Defendants justifiably pursued legal proceedings against Plaintiff, and appropriately initiated and followed up on a NYCHA referral for social services, in order to effectuate payment of rent arrears owed by Plaintiff.

Accordingly, the Court grants summary judgment in favor of Defendants with respect to Plaintiff's prima facie tort claim.

**H.  Other Claims**

The Court has carefully reviewed Plaintiff's Second Amended Complaint and all submissions in response to Defendants' motion for summary judgment.  Plaintiff's arguments often conflate multiple causes of action or refer to a cause of action not present in the pleadings. Construing this pro se plaintiff's submissions liberally and interpreting them to raise the

strongest arguments that they may suggest, Triestman, 470 F.3d at 474, the Court finds all of Plaintiff's claims to be without merit.[11]

## VI. Conclusion

For the reasons discussed above, Defendants' motion for summary judgment (DE 51) is GRANTED with respect to all claims asserted by Plaintiff.  Plaintiff's cross-motion for summary judgment on his fraud claim (DE 55) is DENIED.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  The Clerk of the Court is directed to close the case.  Any pending motions are moot.

SO ORDERED.

Dated: New York, New York
        March 25, 2010

Kimba M. Wood
United States District Judge

---

[11] Defendants have raised a statute of limitations defense in their motion papers.  With respect to claims of intentional state law torts, including malicious prosecution, intentional infliction of emotional distress, assault, and prima facie tort, the one-year statute of limitations may apply to prevent recovery for conduct committed prior to January 28, 2007, as noted by Defendants.  See N.Y. C.P.L.R. § 215.  Because Plaintiff's claims warrant summary judgment based on lack of merit, the Court need not engage in the statute of limitations analysis.